HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| D.B., a minor child, by his next friend, M.M.; H.C., a minor child by her mother and next friend, T.S.; CHARLES WILEN, by his guardian and next friend, JANICE WILEN, on behalf of themselves and a class of persons similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>SUSAN DREYFUS, in her official capacity as Secretary of the Washington State Department of Social and Health Services and J. DOUGLAS PORTER, in his official capacity as the Director of the Washington State Health Care Authority,<br><br>       Defendants. | No.  11-cv-2017 RBL<br><br>ORDER<br><br>[Dkt. #5] |

  Before the Court is Plaintiffs' motion for class certification.  (Pls.' Mot. for Class Cert., Dkt. #5.)  In this suit, Plaintiffs seek to restrain the Washington Department of Social and Health Services ("DSHS") from lowering the base-hours allotment of Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") services.  Because the Court finds that the proposed class lacks commonality and typicality, the motion is denied.

Order - 1

# I.  BACKGROUND

The named Plaintiffs are children (or under-21 adults) that receive personal care services through the State's Medicaid EPSDT program. (Second Am. Compl. ¶ 3.) In 2011, the Washington Supreme Court held in *Samantha A. v. DSHS*, 171 Wash. 2d 623 (2011), that certain DSHS adjustments to base hours based only on a recipient's age and housing status (i.e., whether they lived with their parents) violated Medicaid comparability rules. The court faulted DSHS for using irrebuttable age- and housing-presumptions to avoid "an individualized determination of a recipient's actual need." *Id.* at 1142 (citing *Jenkins v. DSHS*, 160 Wash. 2d 287 (2007)). The court aptly summarized DSHS's procedures:

> DSHS determines a child's MPC service level using DSHS's Comprehensive Assessment Reporting Evaluation (CARE) formula. Numerous regulations govern the operation of the CARE assessment formula. *See* WAC § 388-106-0050 through-0235. In the initial stage of a CARE evaluation, the individual is scored on factors such as an individual's ability to perform daily activities and an individual's mental status. The individual is then assigned to 1 of 17 classification groups, each group having a set number of base MPC hours associated with it. WAC § 388-106-0125. Once these base hours are established, an assessor individually considers the recipient's self-performance and the amount of informal support available for the recipient's activities of daily living (ADL) and instrumental activities of daily living (IADL). The recipient's level of informal support for each ADL and IADL then reduces the base hours allocated to that recipient by a predetermined percentage. WAC § 388-106-0130. This process is the same for children and for adults.

*Id.* at 1140. The court determined that DSHS's changes to the CARE formula "mechanically categoriz[ed]" recipients such that certain needs were considered "met" solely because of a recipient's age or housing status. For example, the named-plaintiff in that case, Samantha A., saw her base hours reduced from 90 hours to 39 solely because the formula classified Samantha's "dressing, eating, hygiene, and transportation needs as being met because of her age and because she lived with her mother," not because a DSHS had actually determined that the needs were met. *Id.* at 1140.

In the wake of *Samantha A.*, DSHS repealed W.A.C. § 388-106-0126 and amended W.A.C. § 388-106-0125, changing the base hours of the preliminary hours groups for personal services recipients. The changes altered the base-hour allotments for each of the seventeen groups, from *Group A Low* to *Group E High* (e.g., Group A High now receives an initial

allotment of 22 hours (down from 26); Group C High receives 176 hours (down from 194); Group E High receives 393 hours (down from 416)). 2012 Wa. Reg. Text 288788 (NS) (W.A.C § 388-106-0125, DSHS emergency rules, Apr. 4, 2012). W.A.C. § 388-106-0125 notes expressly that the number of base hours is "based upon the level of funding provided by the legislature for personal care services, and based upon the relative level of functional disability of persons in each classification group as compared to persons in other classification groups." *Id.* But, in contrast to the situation in *Samantha A.*, DSHS began individualized reviews of each recipient to ensure that the State provides all medically necessary services. Many of the re-assessed children's hours have in fact *increased* as a result. If the CARE formula produces an allotment too low, a DSHS assessor may use the Exception-to-the-Rule ("ETR") procedure to recommend a departure (although Plaintiffs argue that there is no intermediary appeal process for the ETR).

Based on these facts, Plaintiffs seek to certify the following class:

> All children and youth under the age of 21 in the state of Washington who are currently receiving Medicaid-funded, in-home personal care services and those who apply for and are eligible for such services in the future.

(Second Am. Compl. ¶ 81.)

## II.   DISCUSSION

Plaintiffs seek class certification under Federal Rule of Civil Procedure 23. Under Rule 23(a), members of a class may sue or be sued as representative parties only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Before certifying a class, the Court must conduct a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied. *See General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Additionally, a court may certify a class only if one of the following Rule-23(b) conditions applies:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b). "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). Plaintiffs have not met their burden with respect to commonality or typicality, and the Court addresses its analysis to those issues.

**A. Commonality**

A class has sufficient commonality "if there are questions of fact and law which are common to the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). But, "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.* Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Commonality requires the "plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As the Supreme Court has stated, what matters is not common questions so much as "common answers," those that are "apt to drive the resolution of the litigation." *Id.* (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Unfortunately for Plaintiffs, their claims cannot provide common answers.

Plaintiffs seek to certify a class of ***all*** children and youths receiving Medicaid-funded personal care services. But, as the State has shown, many of those reassessed have seen their allotted hours rise. And for those whose hours have decreased, there is no showing that the

hours shrunk solely due to the State's new rules rather than a change in circumstances of the individual child—a child's condition might improve or a parent might provide more care. Indeed, Plaintiffs have not contested that many members of the proposed class previously left allotted personal-care-services hours unused at the end of the month, suggesting that decreases may be entirely detached from the reduction in base hours. In short, the answers to the common questions could hardly be more individualized. To determine liability, the Court would need to hold a hearing on every class member, take testimony from every parent, every DSHS administrator, and review whether DSHS was providing all medically necessary care in each individual case. Thus, Plaintiffs cannot show commonality, and for the same reasons, fail to show typicality.

**B.  Typicality**

The test of typicality is whether: (1) other members have the same or similar injury; (2) the action is based on conduct which is not unique to the named plaintiffs; and (3) other class members have been injured by the same course of conduct. *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 415 (W.D. Wash. 2003) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The problem is obvious: Plaintiffs cannot show that they have suffered the same injury as the class, or even which parts of the class have suffered injury. Again, while the starting point—base hours—has been lowered, DSHS is re-assessing each recipient to ensure that *authorized* hours meet the child's medical needs. Some of the proposed class will see their allotment rise, some will see it fall, but why it rises or falls requires a severely individualized analysis.

### III.  CONCLUSION

Because the Court finds that Plaintiffs have failed to show both commonality and typicality, it need not review the remaining factors.  For the reasons stated above, the motion for class certification (Dkt. #5) is **DENIED**.

Dated this 18th day of May 2012.

　　　　　　　　　　　　　　　　　　　　　／s／ Ronald B. Leighton
　　　　　　　　　　　　　　　　　　　　　Ronald B. Leighton
　　　　　　　　　　　　　　　　　　　　　United States District Judge